IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

MALIK RAHAB,

              Petitioner,       :       Case No. 1:17-cv-412

    - vs -                         District Judge Michael R. Barrett
                                  Magistrate Judge Michael R. Merz

TIM BUCHANAN, Warden,
  Noble Correctional Institution

                                :

              Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Malik Rahab. The case is ripe for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 4), the Return of Writ (ECF No. 5), and Petitioner's Traverse Brief (ECF No. 6). The case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the Western Division (ECF No. 7).

**Procedural History**

On September 5, 2014, the Hamilton County grand jury indicted Rahab on one count of burglary, a second degree felony (Indictment, State Court Record, ECF No. 4, PageID 24-25). A jury convicted him of that charge and on February 13, 2015, he was sentenced to six years imprisonment (Judgment, State Court Record, ECF No. 4, PageID 26-27).

1

Rahab appealed, raising one assignment of error: "The court's sentence was contrary to law because the court impermissibly punished Mr. Rahab for exercising his right to a jury trial." (State Court Record, ECF No. 4, PageID 30.) The First District Court of Appeals affirmed. *State v. Rahab*, Case No. C-150186 (1st Dist. Oct. 7, 2015)(unreported, copy at State Court Record, ECF No. 4, PageID 45-47). Rahab appealed *pro se* to the Ohio Supreme Court, raising the same assignment of error.[1] That court declined jurisdiction. (State Court Record, ECF No. 4, PageID 67). However, the Hamilton County Public Defender also appealed on Rahab's behalf and the Supreme Court accepted this appeal. (*Id.* at PageID 79) and affirmed the First District. *State v. Rahab*, 150 Ohio St.3d 152 (2017). Thereafter Petitioner filed the instant habeas corpus case, pleading one ground for relief:

> **Ground One:** Due process is violated when a defendant's sentence is based, even in part, on his decision to exercise his Sixth Amendment right to a jury trial and put the government to its burden of proof.
>
> **Supporting Facts:** Pre-trial the trial court stated: " ... if you didn't take the agreed sentence and you were found guilty, it would be up to the Court to sentence you. And the Court does not look highly on cases where people don't take responsibility and accept that they did something wrong if they're found guilty. You understand that? Meaning it probably would be more. I'm not going to fool you. You understand that?"
>
> At the sentencing hearing the trial court stated:
> • "And yet he went to trial with a prove-it defense"
> • "I don't understand why you wouldn't admit to that and plead to that, and you had to have a trial"
> • "You went to trial. You gambled, you lost. You had no defense. And you even admit that you did it, and yet you put this woman through this trial again."
> • "He went to trial with a prove-it defense. He had absolutely no defense."

---

[1] In the Ohio Supreme Court, errors are raised as "propositions of law" rather than "assignments of error," which is the term for errors raised in the intermediate courts of appeals. *Compare* Ohio S.Ct.Prac.R. 7.02(C)(1) and Ohio App.R. 16(A)(3).

> - "He gambled, he lost. I'm sorry you know right from wrong, but it just does not- its like, yeah, now that its all over, oh, I'm sorry I got caught, I'm sorry I got - I went to trial and I lost. Too late. Too late. To me, too late."
> - " ... he went to trial, he lost, he gambled"
> - (After Mr. Rahab apologized): "Own up now. Okay. Little late."
> - "I mean, it really was a prove-it defense. They had him. Okay."
> - "You lost your gambling. You did this. You had no defense, and you wouldn't take responsibility. You wanted to go to trial. All, big winner you are. Six years Ohio Department of Corrections."
>
> Mr. Rahab was convicted of burglary. One night, he opened a window to a home, reached inside with his arm and took a purse off a table by the window. Only his arm entered the house and the owner was not aware anything had happened until she came downstairs looking for her purse and noticed the open window.

(Petition, ECF No. 1, PageID 5, 16.)

# Analysis

Respondent raises no affirmative or procedural defenses to the Petition, but defends on the merits. He asserts that the relevant clearly established Supreme Court precedent is *North Carolina v. Pearce*, 395 U.S. 711 (1969), and *Alabama v. Smith*, 490 U.S. 794 (1989), and that the Ohio Supreme Court's application of these cases is "both correct and reasonable." (Return, ECF No. 5, PageID 180.)

The Anti-Terrorist and Effective Death Penalty Act, codified at 28 U.S.C. § 2254, limits the scope of federal habeas relief to cases where a person is in custody "in violation of the Constitution or law or treaties of the United States." § 2254(a). When the federal claim has been decided on the merits by the state courts, § 2254(d) provides the standard for review in habeas:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

> granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The relevant state court decision for review is that of the Ohio Supreme Court. Because that court decided the federal claim on the merits with an explanation of its decision, this Court does not "look through" that decision to that of the First District Court of Appeals. *Wilson v. Sellers*, 138 S.Ct. 1188 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

However, the opinion of the Ohio Supreme Court was divided, with only Justice French concurring in the controlling opinion of Justice DeWine. Three other justices (O'Connor, O'Donnell, and Kennedy) concurred in the judgment only, without offering any explanation of their votes. Judge Hoover of the Fourth Appellate District, who was sitting for Justice Fischer, dissented in part with the concurrence of Justice O'Neill.

United States Supreme Court precedent is unclear as to how to treat such a fractured decision. It is unlike an unexplained state supreme court decision which a habeas court must "look through" to the last reasoned state court decision. *See Ylst, supra*. Rather, it is a decision with an explanation that has not garnered a majority or even a plurality opinion. Under those circumstances, this Court must determine whether the **decision** of the Ohio Supreme Court is contrary to or an unreasonable application of United States Supreme Court precedent, hypothesizing other rationales that might support the decision. *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**The Constitutional Right At Issue**

Due process of law prohibits a judge from imposing a sentence motivated in any part by a desire to punish a defendant for exercising his criminal procedural rights.

In *North Carolina v. Pearce, supra,* the Supreme Court considered two cases in which defendants had won a new trial by post-conviction process and then were sentenced more harshly after the second trial. *Pearce*, decided the same day the Court made the Double Jeopardy Clause applicable to the States.[2] involved a double jeopardy question which is not presented here. Having disposed of double jeopardy and equal protection arguments, the Court turned to the Due Process claim. Justice Stewart wrote:

> It can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside. Where, as in each of the cases before us, the original conviction has been set aside because of a constitutional error, the imposition of such a punishment, "penalizing those who choose to exercise" constitutional rights, "would be patently unconstitutional." *United States* v. *Jackson*, 390 U.S. 570, 581. And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to "chill the exercise of basic constitutional rights." *Id*., at 582. See also *Griffin* v. *California*, 380 U.S. 609; cf. *Johnson* v. *Avery*, 393 U.S. 483. But even if the first conviction has been set aside for nonconstitutional error, the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law. (footnote omitted) "A new sentence, with enhanced punishment, based upon such a reason, would be a flagrant violation of the rights of the defendant." *Nichols* v. *United States*, 106 F.2d 672, 679. A court is "without right to . . . put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. . . . It is unfair to use the great power

---

[2] *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

> given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice." *Worcester* v. *Commissioner*, 370 F.2d 713, 718. See *Short* v. *United States*, 120 U. S. App. D. C. 165, 167, 344 F.2d 550, 552. "This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. *Griffin* v. *Illinois*, 351 U.S. 12; *Douglas* v. *California*, 372 U.S. 353; *Lane* v. *Brown*, 372 U.S. 477; *Draper* v. *Washington*, 372 U.S. 487." *Rinaldi* v. *Yeager*, 384 U.S. 305, 310-311.
>
> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge. (footnote omitted).

395 U.S. at 723-25.

Having decided that vindictiveness for having succeeded on appeal "must play no part" in the new sentence, the Court determined that proof that vindictiveness has not entered into the sentence is required:

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

395 U.S. at 726.

The *Pearce* Court did not use the phrase "presumption of vindictiveness," but later Courts characterized the *Pearce* decision in that way. In *United States v. Goodwin*, 457 U.S. 368 (1982),

Justice Stevens explained the underlying rationale:

> To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363. In a series of cases beginning with *North Carolina v. Pearce* and culminating in *Bordenkircher v. Hayes*, the Court has recognized this basic -- and itself uncontroversial -- principle. For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.

457 U.S. at 372. Justice Stevens noted the "institutional bias" against retrying decided issues and noted "the same institutional pressure that supports them might also motivate a vindictive prosecutorial or judicial response to a defendant's exercise of his right to obtain a retrial of a decided question." *Id.* at 375.

In *Texas v. McCullough*, 475 U.S. 134 (1986), Chief Justice Burger repeated the "presumption of vindictiveness" characterization of *Pearce*, but stated the rationale for the presumption: "Beyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent." *Id.* at 138.

The criminal procedural rights at issue in the *Pearce* line of cases are the rights to appeal or otherwise obtain a new trial. The right to appeal, however, is not a constitutional right. There is no federal constitutional right to appeal criminal verdicts for error review. *McKane v. Durston*, 153 U.S. 684 (1894), cited as still good law in *Lopez v. Wilson,* 426 F.3d 339, 355 (6th Cir. 2005); *Halbert v. Michigan*, 545 U.S. 605, 610 (2005). "Due process does not require a State to provide appellate process at all." *Goeke v. Branch*, 514 U.S. 115, 120 (1995).

Nonetheless, when a State provides even a statutory right to appeal, the Federal Constitution provides ancillary rights which are protected in habeas corpus, e.g. the right to appointed counsel and a free transcript for indigent appellants (Equal Protection Clause) and the

right to effective assistance of counsel (Sixth Amendment). See *Griffin v. Illinois*, 351 U.S. 12 (1956); *Douglas v. California*, 372 U.S. 353 (1963); *Anders v. California*, 386 U.S. 738 (1967); *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988).

If the Constitution provides that much protection for a non-constitutional procedural right, how much more must it provide for the fundamental constitutional right to trial? That is the right at issue in this case: the right of a criminal defendant to refuse to accept a plea bargain and to insist on putting the government to its proof. If the sentencing judge here punished Rahab for exercising his right to a trial, she thereby violated his Sixth Amendment rights. The question is how that vindictiveness can be proved.

**The Ohio Supreme Court Correctly Decided No Presumption of Vindictiveness Applies Here**

The Ohio Supreme Court on appeal recognized that it was precisely this Sixth Amendment right to trial that was at issue:

> [**P7] Rahab argues that the trial court vindictively imposed a sentence in retaliation for the exercise of his right to a jury trial, in violation of his due-process rights under the United States Constitution.
>
> [**P8] "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort * * *." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), citing *North Carolina v. Pearce*, 395 U.S. 711, 738, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (Black, J., concurring in part and dissenting in part). There is no question, then, that a sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law. *See State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989).

150 Ohio St. 3d at ¶¶ 7-8. It also recognized "t]he more difficult question is how a defendant proves vindictiveness." *Id.* at ¶ 8.

8

Rahab asserted he was entitled to a presumption of vindictiveness:

> [T]he [trial] court's statements during sentencing gave rise to an inference that it sentenced him vindictively and that the inference could be rebutted only by "an unequivocal statement as to whether the decision to go to trial was or was not considered in fashioning the sentence," see *State v. Scalf*, 126 Ohio App.3d 614, 621, 710 N.E.2d 1206 (8th Dist.1998). Thus, he is asking this court to presume vindictiveness based on the court's statements.

150 Ohio St. 3d at ¶ 9. The Ohio Association of Criminal Defense Lawyers, permitted to participate as amicus curiae, went further and claimed "a presumption of vindictiveness arises whenever a court imposes a sentence that is harsher than was offered during plea negotiations." ¶ 9.

Analyzing *Pearce* and its progeny the Ohio Supreme Court rejected the application of any presumption of vindictiveness in this case. 150 Ohio St. 3d 152 at ¶¶ 10-18. The question for this Court under 28 U.S.C. § 2254(d)(1) is whether this part of the decision is contrary to or an unreasonable application of the *Pearce* line of cases.

The Supreme Court has elaborated on the standard of review of state court decisions on claims later raised in federal habeas corpus:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law. See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To these ends, § 2254(d)(1) provides:
>
>> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

9

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.
>
> As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S., at 404-405, 120 S.Ct. 1495. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405-406, 120 S. Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407-408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 693-94 (2002)(some quotation marks omitted). Accord, *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Woods v. Donald*, 575 U.S. ___, 135 S.Ct. 1372, 1376; 191 L. Ed. 2d 464 (2015)(*per curiam* GVR), reversing *Donald v. Rapelje,* 580 Fed. Appx. 277 (6th Cir. 2014); *Virginia v. LeBlanc,* 582 U.S. ___, 198 L. Ed. 2d 186 (2017)(GVR).

Only holdings of the Supreme Court, not dicta in its opinions, can warrant relief. *Bryan v. Bobby*, 843 F.3d 1099, 1105-6 (6th Cir. 2016), citing *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014). In his Traverse, Petitioner has cited extensively to opinions of Ohio courts on vindictive sentencing, but only United States Supreme Court decisions are relevant.

The Magistrate Judge concludes the Ohio Supreme Court's decision is neither contrary to nor an objectively unreasonable application of *Pearce* and its progeny.

The same institutional bias in favor of finality and judicial economy that is operative after

10

a reversal on appeal even more strongly pressures a trial judge to desire plea bargaining. A busy urban trial judge such as the Hamilton County Common Pleas judge who handled Rahab's case probably has many hundreds of felony cases to manage in a year's time. In 2012 the Supreme Court noted that "[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." *Missouri v. Frye*, 566 U.S. 134, 143 (2012). .A mere doubling of the trial rate would enormously complicate felony judges' lives, particularly since legislatures are so parsimonious with new judgeships. In the Ohio system, crowded felony dockets must also be managed in compliance with the rigorous speedy trial provisions of Ohio Revised Code § 2945.72.

It is for these and similar reasons that judges and prosecutors are constitutionally permitted to reward those who plead guilty. *Missouri v. Frye, supra,* at 145; *Alabama v. Smith, supra,* citing *Brady v. United States*, 397 U.S. 742, 748, 90 (1970); *Bordenkircher v. Hayes*, 434 U.S. at 363, and *Corbitt v. New Jersey*, 439 U.S. 212, 221-23 (1978). Consequently, no presumption of vindictiveness attends a harsher sentence after trial than would have been imposed pursuant to a rejected plea bargain. Rahab's claim under 28 U.S.C. § 2254(d)(1) should therefore be rejected, along with the broader claim of the Ohio Association of Criminal Defense Lawyers.[3]

**The Record Shows Actual Vindictiveness in Sentencing**

Having rejected the proposed presumption of vindictiveness, the Ohio Supreme Court reviewed the record as a whole on the question whether Rahab had proved actual vindictiveness. It applied a "presumption that the trial court considered the appropriate sentencing criteria." 150

---

[3] To be clear, the OACDL appeared as amicus only in the Ohio Supreme Court and not in this habeas action, where Petitioner is proceeding *pro se*.

11

Ohio St. 3d 152 at ¶ 19. It then announced as a standard of review that

> We will reverse the sentence only if we clearly and convincingly find the sentence is contrary to law because it was imposed as a result of actual vindictiveness on the part of the trial judge. See R.C. 2953.08(G)(2); *State v. Marcum*, 146 Ohio St. 3d 516, 2016-Ohio-1002, 59 N.E.3d 1231 ¶ 1.

150 Ohio St. 3d at ¶ 19. *State v. Marcum* in turn interprets Ohio Revised Code § 2953.08(G) under a plain meaning standard. Justice French there wrote for a unanimous court:

> [**P1] In this appeal that focuses on a certified-conflict issue, we address the standard of review that appellate courts must apply when reviewing felony sentences. Applying the plain language of R.C. 2953.08(G)(2), we hold that an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.

146 Ohio St. 3d at 516. The Court rejected the abuse of discretion standard it had previously applied in *State v. Kalish*, 120 Ohio St. 3d 23 (2008), emphasizing the General Assembly did not authorize appellate review for abuse of discretion.

In applying a clear and convincing evidence standard, then, the Ohio Supreme Court clarified that it was following the plain language of an Ohio statute and not that it believed that standard of review was required because there was a federal constitutional question involved.

This Court agrees. The relevant standard for this Court's review is mandated by 28 U.S.C. § 2254(d)(2): did the Ohio Supreme Court's adjudication of the actual vindictiveness claim "result[ ] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"?

The Sixth Circuit set forth the standard of review under § 2254(d)(2) in *Franklin v. Bradshaw*, 695 F.3d 439 (6th Cir. 2011):

> A state-court determination . . . is a factual finding, to which deference must be paid. *Thompson v. Keohane*, 516 U.S. 99, 108-11, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995). "[R]egardless of whether we would reach a different conclusion were we reviewing the case de novo, the findings of the state court must be upheld unless there is clear and convincing evidence to the contrary." *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001) (applying 28 U.S.C. § 2254(e)(1)); *see also Wood v. Allen*, 558 U.S. 290, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010) (stating that as for 28 U.S.C. § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"). And that deference must be paid even to state-court factual findings made on appeal. *See Rushen v. Spain*, 464 U.S. 114, 120, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983); *Sumner v. Mata*, 449 U.S. 539, 546-47, 101 S. Ct. 764, 66 L. Ed. 2d 722 (1981). "Further, the Supreme Court has very recently made abundantly clear that the review granted by AEDPA is even more constricted than AEDPA's plain language already suggests." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). "[S]o long as fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under AEDPA. *Harrington v. Richter*, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011) (internal quotation marks omitted).

695 F.3d at 447-48.

The question of whether a sentencing judge harbored a vindictive motive – an intention to punish a defendant for exercising his or her right to a trial – is a question of fact. A determination of the reasonableness of the Ohio Supreme Court's decision of that question of fact must depend upon a review of the record that was before that court. It is for that reason that the Magistrate Judge ordered the record here expanded "to include the entire state court record that was before the Ohio Supreme Court" (ECF No. 8, PageID 202). The Warden has responded to that Order by filing the Supplemental State Court Record (ECF No. 9).

On January 7, 2015, prior to trial, the trial judge, The Honorable Jody M. Luebbers, inquired if there had been any plea negotiations. The prosecutor responded that the State was "prepared to offer a recommended agreed term of incarceration on a guilty plea as charged plea of

13

three years in the Ohio Department of Corrections." (Transcript, ECF No. 9, PageID 207-208). Defense counsel responded that her client, Mr. Rahab, did not accept that offer. Judge Luebbers then advised Rahab

> Sir, you understand that the State is offering to do an agreed sentence of three years in prison. The charge that you're facing now, sir, carries a potential sentence of 2 to 8. There's the presumption that you go to prison, okay? And if you didn't take the agreed sentence and you were found guilty, it would be up to the Court to sentence you. And the Court does not look highly on cases where people don't take responsibility and accept that they did something wrong if they're found guilty.
>
> You understand that? Meaning it probably would be more. I'm not going to fool you. You understand that?

*Id.* at PageID 208-209. Rahab answered that he understood and the court proceeded with the selection of a jury and the trial.

After Rahab was convicted, the case was set for sentencing on February 13, 2015. Judge Luebbers confirmed that Rahab had had a chance to review the presentence investigation report and the victim impact statement. *Id.* at PageID 656. His attorney admitted that, at age nineteen, Rahab had already had "two adult contacts, but numerous juvenile contacts." *Id.* Judge Luebbers responded "And yet he went to trial with a prove-it defense." *Id.* at PageID 657. She then invited Rahab's allocution. He at first blamed his trial attorney for insisting on a trial. *Id.*

The judge confirmed that a three-year sentence had been offered and asked Rehab why he didn't take it. He responded that "I didn't think it was worth what I did, three years." *Id.* at PageID 658. Judge Luebbers asked Rahab if he knew what he was looking at now. *Id.* When he responded "no," she replied:

> THE COURT: Eight years. I told you that when they offered you three. So, you know, I'm a little perplexed that you're saying you didn't think three was fair and you're telling me that your attorney

14

made you go to trial. And now you're telling me that you did it. You did it, didn't you, right?

THE DEFENDANT: (Nodding.)

THE COURT: Did you do this offense or not?

THE DEFENDANT: Yes, I did.

THE COURT: Okay. So I don't understand why you wouldn't admit to that and plead to that, and you had to have a trial, or why you wouldn't take the three years because I can sentence you to eight.

Makes no sense to me. So I don't know what you talked about with your attorney, but -- too late. You went to trial. You gambled, you lost. You had no defense. And you even admit that you did it, and yet you put this woman through this trial again. You traumatized her by breaking into her house. And then you had to traumatize her again to relive it and go to trial. I don't get it.

\* \* \*

THE COURT: She [your attorney] wanted to go to trial?

THE DEFENDANT: Yeah.

THE COURT: She wanted to go to trial, not you?

THE DEFENDANT: No, I didn't want to go to trial.

THE COURT: Then why when we asked you, when I asked you if you wanted three years on the record -- I asked you, not her, because she's your attorney – this is really all about you; she doesn't do the time, you do -- why, when I asked you if you wanted to take three years from the State, she didn't say no, you did? So can you explain that?

THE DEFENDANT: (Shaking head.) I ain't think it was fair.

THE COURT: Okay, that's fine. So you chose not to take the three, not her, you, right?

THE DEFENDANT: Yeah.

15

>THE COURT: Okay. It comes down to you, bottom line. Anything else you want to say?
>
>THE DEFENDANT: I know what I did was wrong and I learned from it. And I want better than this. This ain't what I want. And I'm sorry for what I did.
>
>THE COURT: I sure wish I would have heard that before the trial.
>
>THE DEFENDANT: (Nodding head.)
>
>THE COURT: Anything else you want to say?
>
>THE DEFENDANT: (Shaking head.) No, ma'am.
>
>THE COURT: Okay. Do you have anybody else who wants to speak on his behalf?

ECF No. 9 at PageID 658-61.

>THE COURT [in response to Rehab's older brother] And did he admit it to the police? No, he doesn't have to. He doesn't have to tell the police anything. Did he admit it at trial [sic]? He did not. The State offered him three, and he didn't take it.
>
>He went to the trial with a prove-it defense. He had absolutely no defense. They had his fingerprints. He gambled, he lost. I'm sorry, you know right from wrong, but it just does not -- it's like, yeah, now that it's all over, oh, I'm sorry I got caught, I'm sorry I got -- I went to trial and I lost. Too late. Too late. To me, too late.
>
>I appreciate you being here, because most people have nobody to come for them. It means something to me. But he knows right from wrong, and I'm one of the judges, you break into somebody's house, you're going to prison. You don't do that.
>
>He has not -- he went to trial. He lost, he gambled.

*Id.* at PageID 664-65.

>THE COURT: The thing I don't like is your attitude. You're throwing your attorney under the bus. This is all about you; it's your decision. I looked at you and said, do you want the three or not; you're looking at eight. And you told me, I don't want three. That's what you told your attorney.

16

> Well, guess what, you lost your gambling. You did this. You had no
> defense, and you wouldn't take responsibility. You wanted to go to
> trial. All right, big winner you are.
>
> Six years Ohio Department of Corrections.

*Id.* at PageID 674-75. The judge then explained to Rahab's older brother that it would have been eight except for the brother's comments in mitigation.

The controlling opinion for the Ohio Supreme Court repeats most of this colloquy verbatim. It admits "[t]he court's intemperate statements are troubling." 150 Ohio St. 3d at ¶ 27. But it refuses to interpret them as evidence of vindictiveness. Instead, Justice DeWine wrote

> [I]t seems likely that the court was not taking Rahab to task for going
> to trial but rather for acting contrite and admitting his crime only
> after he had been found guilty. Genuine remorse is one factor to be
> considered by the court when it makes its sentencing decision. See
> R.C. 2929.12(D)(5).

*Id.* at ¶ 28. It is of course correct that genuine remorse is an appropriate mitigating factor, but punishing a defendant for not admitting his crime before trial is the equivalent of punishing him for exercising his trial right. If a defendant admits his offense before trial, there is no occasion for a trial.

Justice DeWine continued with his evaluation of the evidence: "More concerning was the court's statement that Rahab had put the victim through the trauma of a trial. The sentencing court is to consider how the defendant's criminal conduct—not his exercise of constitutional rights— impacted the victim. See R.C. 2929.11(B)." *Id.* at ¶ 28. This comment supports a finding of actual vindictiveness. There was nothing apparently traumatic about the trial – the victim was not reliving a confrontation with Rahab, because the evidence showed he stole her purse through a window without any contact. The trial judge seems to be saying any trial is a "trauma" for the witnesses and a defendant is appropriately punished for insisting that witnesses come and testify,

17

a procedure guaranteed by the Confrontation Clause.

Justice DeWine then summarizes the other evidence which was presented to Judge Leubbers:

> [**P29] But the court had information beyond the victim's trauma to consider before imposing sentence. Rahab's case manager from a drug-treatment program told the court that Rahab had not fared well in treatment. Rahab had started and quit several jobs, against the advice of the program's employees. Rahab was "difficult" to work with and "noncompliant in a lot of different areas." Due to Rahab's problems in treatment and his burglary conviction, the case manager explained that Rahab could not remain in the program.
>
> [**P30] Further, the assistant prosecuting attorney disclosed that Rahab, who was 19 at the time of sentencing, had been adjudicated delinquent on 22 occasions as a juvenile. One of the adjudications was for robbery.

150 Ohio St. 3d at ¶ 28. This Court agrees that the information summarized in these two paragraphs would substantively support the sentence imposed, if it were information the trial judge relied on. Nothing said in this Report should be interpreted as believing the incarceration actually imposed was disproportionate to the offense.

But there is no evidence from Judge Leubbers' comments that she in fact relied on any of this information. Rather, when her stated reasons for the sentence are taken at face value – i.e., interpreted as she appeared to intend them to be interpreted – they evince solely disapproval of the fact that Rahab insisted on a trial. This Court is of course limited in the evidence it can consider to the evidence that was before the Ohio Supreme Court. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

The Supreme Court precedent cited above and indeed cited by Justice DeWine at the outset of the controlling opinion holds that punishment for exercising a procedural right may not play any part in the imposition of sentence. Judge Leubbers' words make it plain beyond peradventure

that a major factor in her sentencing here was her upset that Rahab had insisted on trying a case he was very likely to lose. Indeed, that is the only factor she mentions except for her passing mention of Rahab's brother's comments. Her words are not merely intemperate; they evince an unconstitutional motive to punish.

**Conclusion**

The decision by the Ohio Supreme Court that actual vindictiveness played no part in the sentence imposed in this case is an unreasonable determination, given the evidence before it. It is therefore respectfully recommended that the Court issue a conditional writ of habeas corpus requiring the State of Ohio to release Petitioner unless he is re-sentenced by a different judge within ninety days of this Court's judgment.

If the District Court disagrees with this conclusion and denies the writ, it should grant Petitioner a certificate of appealability on the question whether vindictiveness played an unconstitutional part in his sentence. Reasonable jurists, including the dissenters in the Ohio Supreme Court, could conclude actual vindictiveness played a part in the sentencing.

June 8, 2018.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).